**UNITED STATES DISTRICT COURT**
District of New Jersey

CHAMBERS OF
**JOSE L. LINARES**
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

**NOT FOR PUBLICATION**

**LETTER OPINION**

January 4, 2010

**Via Electronic Filing**

Abraham S. Alter
Langton & Alter
P.O. Box 1798
1600 St. Georges Ave.
Rahway, NJ 07065

Benil Abraham
Special Assistant U.S. Attorney
Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278

      Re:    **Dennis Pelech v. Commissioner of Social Security**
                  Civil Action No.: 10-1024 (JLL)

Dear Counsel:

      Presently before the Court is an appeal filed by Dennis Pelech (hereinafter "Claimant") seeking review of the Administrative Law Judge's ("ALJ") decision denying his claim for Supplemental Security Income Benefits ("SSI"). No oral argument was heard pursuant to Federal Rule of Civil Procedure 78. Plaintiff claims that the ALJ's decision was not supported by substantial evidence and therefore requires reversal, or alternatively, remand to the Commissioner for further proceedings. In opposition, Defendant argues that the ALJ's findings are supported by substantial evidence and should be upheld. The Court, having considered the parties' submissions, and for the reasons set forth below, affirms the decision of the ALJ.

**PROCEDURAL HISTORY**

      Claimant applied for SSI on June 8, 2006. The application was denied initially and again upon Reconsideration. Hearings were held before ALJ Michael L. Lissek on February 5 and

1

March 25, 2009 respectively.  ALJ Lissek denied Claimant's application on April 16, 2009 and the Appeals Council further denied Claimant's request for review.  Claimant now appeals ALJ Lissek's ruling pursuant to 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

Claimant, Dennis Pelech, was born on August 25, 1960.  (R. 55).  He has a high school education but cannot read or spell. (R. 56).  Plaintiff has held various positions as a machine operator in different companies throughout his adult life. (R. 56-58).  His most recent position was in 2004 at a cheese factory, where he worked for five weeks. (R. 57).  Plaintiff alleges he stopped working at this position because he was having difficulty performing the duties required of the job, stating "everything was going numb on me, my hands, my legs, my stomach." (R. 57). Prior to that position, Claimant worked as a machine operator in a machine shop for two years between 1998 and 1999. Id.  Claimant would lift between thirty to forty (30-40) pounds in this position.  Claimant alleges he was unable to maintain full-time work for extended periods of time because of the numbness and pain he would encounter while working. (R. 59).

At the time of his February 5, 2009 hearing, Claimant stood 5 feet 11 inches tall and weighed 325 pounds. (R. 60).  Six months prior to that hearing, Claimant weighed 386 pounds. (R. 60-61).  Claimant has been a diabetic since 2004. (R. 63).  During his February 5, 2009 hearing, Claimant alleged he had neuropathy in his feet from his diabetes and that his arms, hands, stomach and the upper part of his legs would go numb. (R. 59-60).  Claimant further alleged that during the previous ten years he would get out of breath and get lightheaded when walking, taking showers, tying his shoes, bending down and standing[1]. (R. 62).  Claimant testified at the hearing that he had been trying to lose weight under doctors orders, but that his recent weight loss of over sixty pounds did not help mitigate his health issues. (R. 62-63).

Since becoming diabetic, Claimant has been monitored with medication, but has not taken insulin. (R. 63).  Claimant testified that his blood sugar levels ranged from 250-340 on a daily basis and that he was unable to afford seeing a diabetic specialist. (R. 64).  Claimant testified that he does not perform any daily activities besides watching television and going down a flight of stairs to check the mail. (R. 67).  He further stated that he only leaves his apartment to pick up "his check"[2] once a month and to go to the doctor every three months. Id.  Claimant testified that he smokes approximately two cigarettes per day. (R. 70).

Claimant has been treated by Dr. Rizzo, M.D. at Union Family Medicine for the past ten years. (R. 61).  Dr. Rizzo's examination notes consistently document morbid obesity along with relatively normal physical examinations.  On a June 1, 2005 doctor's visit, Claimant's blood pressure was 150/100 and his blood glucose was 293. (R. 333).  Claimant's blood glucose level

---

[1]Claimant testified he could walk half a block before having trouble with his breathing, stand for fifteen minutes without irritation and that sitting bothered his stomach, back and knees. He further testified that any kind of exertion caused him to get out of breath. (R. 65-66).

[2]The Court construes this "check" to refer to the welfare payments Claimant receives from the State of New Jersey.

was down to 243 on October 31, 2005. (R. 318). On March 1, 2006 Claimant's blood glucose was 190, on June 6, 2006 it was 177, and on November 1, 2006 it was 185. (R. 303, 307, 315). Claimant's blood pressure remained relatively constant. On February 11, 2005 his blood pressure was 140/80, on June 25, 2005 it was 142/90, on August 29, 2005 it was 146/80, on October 18, 2005 it was 130/94, on February 24, 2006 it was 140/100, on May 3, 2006 it was 122/87, on October 27, 2006 it was 150/100, on November 15, 2006 it was 125/82, on February 27, 2007 it was 130/85, and on June 4, 2007 his blood pressure was 132/90. (R. 295, 301-02, 310, 314, 321, 328-29, 331, 337). During most evaluations, Claimant complained of being fatigued, tired and having a shortness of breath. However, despite continuos recordings of hypertension, morbid obesity and high cholesterol, Claimant's physical evaluations were otherwise normal.

Claimant was admitted to Union Hospital on April 24, 2004 with complaints of back pain. (R. 265). Examination of the back was negative for spasm, tenderness, and deformity. Id. While Claimant's blood glucose was 238, his cardiovascular examination was normal, a chest x-ray revealed no active disease, and examination of the heart and lungs was normal. (R. 265, 269, 273, 277, 280, 283). Claimant was again admitted to Union Hospital emergency room on March 24, 2007 after complaining of a coughing fit that rendered him disoriented after a two-day drinking binge. (R. 230). Examination of the head, eyes, ears, nose, throat, neck, chest and respiratory system, and heart and cardiovascular systems were normal. (R. 230, 238). A chest x-ray was also normal. (R. 255).

On April 2, 2007, Dr. R.C. Patel, M.D. performed a consultation of Claimant for the State of New Jersey Department of Disability Determination Services. (R. 221-24). Claimant was noted to be obese, at 350 pounds, with a recent weight loss of 20 pounds. (R. 222). Physical findings were unremarkable, including normal breath sounds in the lungs with no wheezing or rales. Id. Neuromuscular examination was normal with no weakness or joint pain. Id. A pulmonary function testing was suggestive of obstructive lung disease, however, a chest x-ray was normal. (R. 223). Dr. Patel noted no evidence of neuropathy or any vascular involvement and stated that there was no inflammation, redness or swelling of the joints. (R. 223). Dr. Patel further stated that Claimant had a normal gait without need of a walking device and opined that Claimant was able to perform both fine and gross movements in both hands and had normal grip strength. (R. 222-23).

On May 16, 2007, Claimant underwent an electrocardiogram (ECG) which indicated "a normal perfusion study with mild fixed thinning inferiorly and no evidence of reversibility" and preserved left ventricular function. (R. 256). On October 1, 2007, Dr. Naphtali Britman M.D. completed a Physical Residual Functional Capacity Assessment. (R. 376-83). Dr. Britman found that Claimant was morbidly obese, could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk six hours in an eight hour work day, sit six hours in an eight hour workday, and push or pull with the same limitations as lifting and carrying. (R. 377). Dr. Britman noted that Claimant complained of shortness of breath, but stated that chest x-rays, stress tests, and pulmonary function tests were all normal. Id. The doctor further noted that Claimant's gait was normal and his manipulative functions were unimpaired. Id. Dr. Britman opined that Claimant could occasionally climb ladders and ramps, stoop, kneel, crouch, crawl,

and never balance. (R. 378). Finally, a carotid ultrasound performed on March 18, 2008 by Dr. William Esposito, M.D., produced normal results. (R. 399).

In a two sentence April 2, 2008 letter, Claimant's treating physician, Dr. Rizzo, opined that Claimant was "unable to work at this time due to uncontrollable hypertension and diabetes." (R. 394). The letter gave no further explanation regarding the physician's conclusion. In an undated State of New Jersey Welfare Department Report, Dr. Rizzo reported that Claimant was ambulatory with no limitations in standing, walking, climbing, stooping, bending lifting, or use of the hands, but further opined that Claimant was unable to work full time. (R. 395-96).

During the February 5, 2009 hearing, Dr. Gerald Galst, M.D., testified as a medical expert. Dr. Galst testified that Claimant's main problem was morbid obesity[3] and opined that none of his medical problems, either singularly or in combination, met or equaled a listed impairment. (R. 71). Based on his review of the record, Dr. Galst stated that, despite Claimant's complaints of uncontrollable hypertension, his blood pressure values were largely normal, with only minimal elevation. (R. 72). Dr. Galst noted that the normal results of various chest x-rays and pulmonary function tests in the record suggested that there was no pulmonary disease. (R. 73). The doctor also noted that Claimants ECG's were normal and did not reflect significant hypertension and that his stress tests were all normal, indicating normal cardiac function. (R. 74). Dr. Galst noted that Claimant had significant diabetes that was poorly controlled, but further noted that there was no documented neuropathy associated with Claimant's diabetes. Id. The doctor further noted that while Claimant continually complained of shortness of breath, the record evidenced an essentially normal pulmonary function. (R. 75).

Dr. Galst stated at the hearing that Claimant did not have "any objective abnormalities to document, why, in fact, he is not capable of doing more walking than he is testifying to." Id. Dr. Galst stated that despite Claimant's weight, Claimant was capable of a full range of sedentary work and most light work including lifting, carrying and bench work. Id. Dr. Galst doubted that Claimant's complaints of lightheadedness, dizziness, and tiredness were related to his diabetes, stating that "there is no documentation that his diabetes has been out of control to the extent that he has been symptomatic." (R. 76-77, 79). Dr. Galst opined that Claimant was able to lift fifteen to twenty pounds periodically, and sit and stand for more than several hours at a time, but should not climb ladders, crouch or stoop frequently. (R. 80).

During the March 25, 2009 hearing, the vocational expert ("VE"), Robert Meola, testified regarding Claimant's ability to perform existing work in the national economy. The VE testified that a person with Claimant's vocational profile, who was restricted to light work with no climbing of ladders, and no frequent crouching or stooping could not perform Claimant's past relevant work. (R. 40). The VE testified that such an individual could perform work as a labeler, folder, weigher and garment sorter[4]. (R. 40-41). The VE stated that these jobs required standing

---

[3]During the March 25, 2009 hearing, Claimant's attorney agreed that Claimant's complaints of shortness of breath, tiredness and fatigue "[are] probably due to the excessive, excessive weight that he carries, the morbid obesity." (R. 48).

[4]The VE testified that each of these positions presented about 1,500 jobs locally and over 35,000 jobs nationally. (R. 41).

4

between six to eight hours per day, with an option to sit and required frequent use of the arms and hands. (R. 41-42). The VE further stated that a person who was unable to move their upper extremities would be unable to perform the jobs sited. (R. 42-43). The VE further testified that a person with Claimant's vocational profile who was restricted to light work with no climbing of ladders, and no crouching or stooping, in addition to only being able to stand for five to six hours in an eight hour workday, would be able to perform the jobs of assembler, table worker, coil inspector, and hand mounter.[5]

## LEGAL STANDARDS

In order to receive SSI benefits under the Social Security Act, a claimant must demonstrate that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . ." 42 U.S.C. § 1382c(a)(3)(B). The Social Security Regulation has established a five-step sequential evaluation for adjudication of disability claims, set forth at 20 C.F.R. § 404.1520(a)(4).

The sequential evaluation process is a series of five steps followed in order. If it is determined that the claimant is disabled or not at any step, a decision is made and the evaluation will cease. If a determination cannot be made that the claimant is disabled or not at any step, the evaluation will continue to the next step. At step one, the Commissioner is required to determine if the claimant is engaging in substantial gainful activity. If not, the Commissioner must determine at the second step whether claimant has any "severe impairments." If the claimant does have severe impairments, the Commissioner proceeds to the third step to determine whether the impairment meets or equals the criteria of a "per se disabling" impairment contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner then proceeds to the fourth step where he must determine claimant's residual functional capacity ("RFC") and determine whether claimant can return to his past relevant work. If claimant is unable to perform his past relevant work based on his RFC, the Commissioner proceeds to the final step. At step five, the burden shifts to the Commissioner to show that, based on claimant's RFC and vocational factors, claimant can perform other work existing in significant numbers in the national economy. If the Commissioner cannot show that claimant can perform other work in existence, claimant is determined disabled and is entitled to disability benefits.

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court must affirm the ALJ's decision if it is supported by substantial evidence. Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); see also 42 U.S.C. § 405(g). Substantial

---

[5]The VE testified that each of these positions presented about 1,100 jobs locally and over 30,000 jobs nationally. (R. 41).

evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Thus, when the "[ALJ] is faced with conflicting evidence he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987). The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision. See generally Taybron v. Harris, 667 F.2d 412, 413 (3d Cir., 1981). Furthermore, the reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir., 1992). Rather, the court must give deference to the administrative decision. See Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (review is limited to determining whether decision as a whole is arbitrary, capricious, or contrary to law).

In the determination of whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider the: "(1) objective medical facts; (2) diagnoses and medical opinions of examining physicians; (3) subjective evidence of pain and disability as described by plaintiff and corroborated by others who have observed him; and (4) plaintiff's age, educational background and work history." Curtain v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981). When a medical opinion is consistent with other substantial evidence, it is given controlling weight. 20 C.F.R. §§ 416.927(c)(1), (d)(2) (2007). However, if a medical opinion is either inconsistent with other evidence in the case or is internally inconsistent, the Commissioner will "weigh all of the evidence [to decide] whether [the claimant] is disabled . . ." 20 C.F.R. § 416.927(c)(2). With this framework in mind, the Court now turns to Claimant's arguments.

## LEGAL DISCUSSION

### A.     Summary of the ALJ's Findings

The Court begins by reviewing the ALJ's application of the above five-step process. At step one, ALJ Lissek found that Claimant was not engaged in substantial gainful activity since June 8, 2006, the application date. (R. 11). The ALJ then concluded at step two that Claimant had severe uncontrolled diabetes mellitus and morbid obesity with a body mass index of 47 based on the medical evidence in the record[6]. Id. Accordingly, the ALJ proceeded to step three where he determined that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 12). The ALJ stated that he gave particular attention to the impairments set forth in sections 4.00 (Cardiovascular System) and 9.00 (Endocrine System) of the Listings and that hypertension did not satisfy the requirements of any of the cardiovascular system impairments, while

---

[6] ALJ Lissek considered reports from Dr. Patel, Dr. Rizzo, medical records from Union Memorial Hospital, and a physical residual capacity assessment conducted by New Jersey State Medical Consultant, Dr. Naphtali Britman. (R. 11-12).

Claimant's diabetes did not satisfy the requirements of 9.08 as he did not have neuropathy, acidosis or retinitis proliferans as required by the Listing. Id.

ALJ Lissek then proceeded to step four, where upon careful consideration of the entire record, he found that Claimant had the RFC to "perform the full range of light work as defined in 20 CFR 416.967(b); however, the [C]laimant is limited to jobs: that require no climbing of ladders and no frequent crouching or stooping or crawling." (R. 12). In support of his RFC determination, ALJ Lissek pointed to medical evidence in the record showing no end organ damage, no neuropathy and no vascular involvement, despite elevated blood glucose levels. (R. 13). The ALJ stated that Claimant's kidney functions and stress tests were within normal limits. Id. The ALJ further stated that Claimant was not insulin dependent and that his hospitalization in 2007 was due to excessive drinking. Id. ALJ Lissek explained that while Claimant's impairments could reasonably be expected to cause the alleged symptoms of fatigue, tiredness, and shortness of breath, Claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible based on a consideration of the entire case record. Id. ALJ Lissek then outlined the testimony of the medical expert, Dr. Galst, who disagreed with Dr. Rizzo's opinion that Claimant could not work. Id. The ALJ found that Dr. Galst's testimony was supported by the record as a whole and adopted this opinion as his own. Id.

Subsequently, the ALJ found that according to Claimant's RFC, Claimant was unable to perform his past relevant work of machine operator, as that job was performed at the medium level. Id. ALJ Lissek next proceeded to step five, where he found that considering Claimant's age, education, work experience, and RFC for the full range of light work, there were jobs that existed in significant numbers in the national economy that Claimant could perform. (R. 14). The ALJ based this determination upon testimony of the VE who opined that an individual with Claimant's RFC and additional limitations of no climbing ladders, no frequent crouching, and no frequent stooping could perform the jobs of labeler, folder, weigher, and garment sorter. Id. Due to the determination that Claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, the ALJ found that Claimant was not disabled since June 8, 2006, the date his SSI application was filed. Id.

**B.**    **Analysis**

1.   The ALJ Properly Evaluated Claimant's Obesity Throughout the Sequential Evaluation Process.

Claimant asserts that ALJ Lissek did not properly consider whether Claimant's combination of impairments was equivalent to one of the Listings and did not properly evaluate the effect of obesity on Claimant's other impairments. Claimant argues that the ALJ should have considered Claimant's severe morbid obesity in combination with his other cardiovascular and endocrine impairments at every step of the sequential evaluation, as required by Social Security Ruling 00-3P.[7]

---

[7]The Commissioner of Social Security issued SSR 02-1P which superceded SSR 00-3P, providing clarification regarding the evaluation of obesity in the sequential evaluation process.

7

Claimant argues that the ALJ did not evaluate Claimant's obesity in combination with Claimant's other impairments during the step three analysis. Similar to the ALJ's decision in Poulos v. Comm'r of Soc. Sec'y, ALJ Lissek issued his step three finding only after reviewing all of the objective evidence of record and explicitly stating which Listings he was considering. 474 F.3d 88, 93 (3d Cir. 2007). The Poulos court found that such an analysis satisfied the ALJ's necessary step three discussion and application as required by the Third Circuit in Burnett v. Comm'r of Soc. Sec'y, 220 F.3d 112 (3d Cir. 2000). ALJ Lissek specifically stated that he was considering listings 4.00 and 9.08. The ALJ further stated that Claimant's hypertension did not satisfy the requirements of any of the categories of impairments in the cardiovascular system and that Claimant's diabetes did not satisfy the requirements of 9.08 because Claimant did not have neuropathy, acidosis or retinitis proliferans.

Even if the ALJ had failed to evaluate obesity in combination with Claimant's other impairments, the Court further notes that Claimant did not argue that ALJ Lissek should have applied a different listing, in lieu of, or in addition to Listings 4.00 and 9.08. Nor does Claimant point to specific evidence ignored by the ALJ that would indicate that Claimant's impairments are equivalent to Listings 4.00 or 9.08. The Third Circuit has held that a Claimant must explain how the combination of his impairments would be equivalent to the Listings. Williams v. Barnhart, 87 Fed. App'x 240, 243 (3d Cir. 2004). The Williams court denied remand on the grounds that the claimant did not explain how a consideration of the interrelationship among her impairments would have differed from the one provided by the ALJ. Accordingly, this Court will not issue a remand due to any alleged failure by the ALJ to evaluate the effect of obesity on Claimant's other impairments, because Claimant has not explained how such consideration would have produced a different result from the ALJ's conclusion.

Claimant further argues that ALJ Lissek did not consider Claimant's obesity when calculating Claimant's RFC. The Court disagrees with this argument and finds that the ALJ did consider Claimant's obesity in his RFC decision as he added certain limitations to Claimant's ability to perform light work. ALJ Lissek limited Claimant to jobs that required no climbing of ladders and no frequent crouching, stooping, or crawling. (R. 12). These functional limitations demonstrate that there was substantial evidence that ALJ Lissek did consider Claimant's obesity in his step four decision.

2. The ALJ Properly Evaluated the Medical Opinion Evidence of Record.

Claimant asserts that the opinion of his treating physician, Dr. Rizzo, proclaiming Claimant disabled, was entitled to controlling weight and that the ALJ should have adopted this opinion over the opinion of Dr. Galst, the medical expert. Claimant correctly points to the treating physician rule of 20 CFR § 404.1527(d)(2), which explains that an ALJ should give more weight to treating sources. The Code further states, "[i]f we find that a treating source's opinion on the issues(s) of the nature and severity of your impairment(s) is well supported by

---

However, the clarifications in SSR 02-1P did not change the requirements of the obesity analysis in any meaningful way.

medically acceptable . . . techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 CFR § 404.1527(d)(2).

On April 2, 2008, Claimant's treating physician, Dr. Rizzo, wrote a two sentence letter opining that Claimant was "unable to work at this time due to uncontrollable hypertension and diabetes." (R. 394). The letter gave no further explanation regarding the physician's conclusion. This opinion is not supported by Dr. Rizzo's own treatment notes. In various physical examinations, Dr. Rizzo noted no abnormal findings. (R. 295, 302, 310, 313, 320, 328, 329, 340). Most telling is a physical examination conducted by Dr. Rizzo on April 1, 2008, one day prior to the letter's creation, where the doctor does not note any debilitating factors. (R. 398). Along with the April 2, 2008 letter, Dr. Rizzo also opined that Claimant was unable to work full time in an undated State of New Jersey Welfare Department Report. (R. 396). However, Dr. Rizzo stated in the same report that Claimant was ambulatory with no limitations in standing, walking, climbing, stooping, bending lifting, or use of the hands. (R. 395). The doctor gave no explanation for this discrepancy. Upon review of all of Dr. Rizzo's notes, the Court finds that Dr. Rizzo failed to explain in any of his treatment notes specific functional limitations that rendered Claimant completely unable to work. Dr. Rizzo's opinion that Claimant was unable to work was, therefore, inconsistent with his own treatment records.

Dr. Rizzo's conclusion that Claimant was unable to work was also refuted by the findings of various doctors seen by Claimant and tests performed upon Claimant. Dr. Patel's April 2, 2007 physical examination of Claimant produced normal results. (R. 221-24). Claimant was also examined by Dr. Britman who completed a Physical Residual Functional Capacity Assessment on October 1, 2007. Dr. Britman found that Claimant was morbidly obese, could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk six hours in an eight hour work day, sit six hours in an eight hour workday, and push or pull with the same limitations as lifting and carrying. (R. 377). Claimant also underwent a carotid ultrasound on March 18, 2008, performed by Dr. William Esposito, M.D., which produced normal results. (R. 399). The Court finds that based upon all of the normal medical findings in Claimant's record, the opinion of Claimant's treating physician, Dr. Rizzo, that Claimant was unable to work, was inconsistent with other substantial evidence in the record and therefore was not entitled controlling weight.

Accordingly, ALJ Lissek properly followed the Code by refusing to give controlling weight to Dr. Rizzo's disability opinions and correctly adopted the opinion of Dr. Galst, the medical expert. Claimant argues that Dr. Galst's opinion should not have been adopted because Dr. Galst never examined or treated Claimant and merely testified over the phone. (Pl. Br. At 6). However, the opinion of a non-examining source may be given great weight and even override a treating source's opinion when it is supported by the evidence of record. Alexander v. Shalala, 927 F. Supp. 785, 795 (D.N.J. 1995).

The Court finds that although Dr. Galst never treated Claimant, the doctor's opinion that Claimant could perform sedentary and light unskilled work was supported by substantial evidence of record. During the February 5, 2009 hearing, Dr. Galst referenced Claimant's numerous physical examinations and tests contained in the record, noting that Claimant's blood pressure, chest x-rays, and pulmonary functions were all relatively normal throughout his examinations. (R. 71-75). Dr. Galst stated that Claimant's main medical problem was morbid obesity, but that Claimant did not have "any objective abnormalities to document, why, in fact,

he is not capable of doing more walking than he is testifying to." (R. 71, 75). The Court finds that Dr. Galst's opinion that Claimant could perform light work was supported by the record, while Dr. Rizzo's opinion that Claimant was unable to work was unsupported by his own treatment notes. Accordingly, there was substantial evidence to support ALJ Lissek's decision to adopt Dr. Galst's opinion over that of Dr. Rizzo, Claimant's treating physician.[8]

## CONCLUSION

For the reasons discussed above, the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act since June 8, 2006 was supported by substantial evidence.[9] The decision of the ALJ is hereby affirmed. An appropriate order accompanies this Opinion.

DATED: January 4, 2010

/s/ Jose L. Linares
JOSE L. LINARES,
UNITED STATES DISTRICT JUDGE

---

[8] Claimant further argues that ALJ Lissek incorrectly assessed Claimant's RFC and ability to work, at steps four and five of the evaluation process. However, because the Court holds that ALJ Lissek correctly adopted Dr. Galst's opinion over that of Dr. Rizzo, the ALJ was, therefore, allowed to adopt Dr. Galst's opinions about Claimant's RFC as well, as this opinion was based on substantial evidence of record. Upon determining Claimant's RFC, the ALJ then correctly considered this RFC, along with Claimant's age, education and work experience to find that there were jobs existing in significant numbers in the national economy that Claimant could have performed. (R. 14). At the March 25, 2009 hearing, ALJ Lissek called a VE to identify work that Claimant could perform based on the above listed factors. (R. 40-43). The VE testified that there were jobs that existed in significant numbers in the national economy that Claimant could have performed, including labeler, folder, weigher and garment sorter. (R. 40-41). Because the VE identified at least one job which Claimant could perform in accordance with his RFC, the Court finds that there was substantial evidence in the record in the form of VE testimony to support the ALJ's determination that jobs existed in significant numbers in the national economy that Claimant could have performed.

[9] As a final argument, Claimant asserts that he was found disabled on a subsequent application based on the same impairments in the current matter. (Pl. Br. At 11-12). However, the subsequent application to which Claimant refers involved a new impairment, not alleged in this matter, and also involved a new period that post-dates the relevant period in this case. Accordingly, this subsequent application has no impact whatsoever on this Courts current decision.